UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>               Plaintiff,<br><br>vs.<br><br>DR. WALTER CAMPBELL, et al.,<br><br>               Defendants. | Case No. 1:24-cv-00004-BLW<br><br>**SUCCESSIVE REVIEW ORDER** |

Pending in Plaintiff Kent Williams' prisoner civil rights case is an Order requiring him to file a proper amended complaint—to include only the Fourth Amendment claims severed from Case No. 1:22-cv-00346-BLW, *Williams v. Atencio, et al* ("Case 346"). His original Complaint violated General Order 342. *See* Case 346, Dkts. 3, 48; Dkt. 3 in this case. Plaintiff has filed a Motion to Amend, together with his proposed Amended Complaint.

The Court must review complaints filed by paupers and prisoners seeking relief against state actors to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915. The Court may dismiss some or all of the claims in a complaint for any of the following reasons:

**SUCCESSIVE REVIEW ORDER - 1**

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, including that the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar sua sponte (on its own) that is often raised as an affirmative defense, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- frivolousness or maliciousness, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief, *id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff has asserted "right to bodily privacy" claims under the Fourth Amendment, which generally protects nonincarcerated individuals against unreasonable searches and seizures. In *York v. Story*, 324 F.2d 450 (9th Cir. 1963), the Court explained how the right against "search and seizure" applies to inmate bodily privacy:

> We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figure from view of strangers, and particularly strangers of the

> opposite sex, is impelled by elementary self-respect and
> personal dignity.

*Id*. at 455.

Some courts have recognized the right to bodily privacy under the Fourth

Amendment, while others recognize it under the Eighth or Fourteenth Amendment. *See*

*Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) (noting the United States

Supreme Court has not expanded the Fourth Amendment to include postconviction

incarceration, but has limited it to pretrial deprivations of liberty). The Court will permit

Plaintiff to amend his pleadings to alternatively proceed under the Eighth and Fourteenth

Amendments.

Inmates placed in suicide watch cells often are deprived of their regular clothing

for safety purposes. In *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1313 (9th Cir.), *opinion*

*amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995), the evidence showed:

> Inmates that are placed on suicide watch in the cell are given
> paper clothing so that they cannot hang themselves with their
> regular clothing. Sometimes the inmates destroy this paper
> clothing and thus are naked or clad only in their underwear.
> According to Sergeant Bradley, inmates placed in the safety
> cell are always given at least paper clothing and are not put
> naked into the cell. One inmate testified that she was placed
> naked into the cell because she threatened to choke herself
> with the paper clothing.

Case law in the Ninth Circuit addressing inmate nudity compelled by prison

officials varies in theory and outcome, but all appear to address strip searches, a fact

pattern not at issue here. In *Michenfielder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988),

the Court held that "infrequent and casual observation, or observation at [a] distance, ... are not so degrading as to warrant court interference."

In 1997, the United States Court of Appeals for the Ninth Circuit observed that "it is highly questionable even today whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex." *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 199 (2001). *See also Byrd v. Maricopa County Sheriff's Department*, 629 F.3d 1135, 1147 (9th Cir. 2011) (pretrial detainee context) ("In this case, the indignity of the non-emergency strip search conducted by an unidentified female cadet was compounded by the fact that there were [15 staff] onlookers, at least one of whom videotaped the humiliating event. For these reasons, we conclude that the cross-gender strip search, as conducted in this case, was unreasonable."). The unique facts of *Byrd*, including that it is a pretrial detainee case, are not a perfect fit for Plaintiff's fact here, but the *Byrd* court considered the following "right of privacy factors": "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." 629 F.3d at 1141 (citation and punctuation omitted).

In *Anderson*, the Ninth Circuit affirmed the district court decision declining to enjoin county officials from ever using a padded cell, called a safety cell, to temporarily confine violent or suicidal prisoners so they could not hurt themselves. 45 F.3d at 1314.

**SUCCESSIVE REVIEW ORDER - 4**

The *Anderson* court's decision was based on findings of "ample testimony that some
prisoners became so violent and such a danger to themselves that temporary placement in
a safety cell was needed in order to deprive the prisoners of all means of harming
themselves" and "sufficient evidence to support the district court's factual finding that the
safety cell was used to control violent inmates, and that the inmates were confined to the
safety cell only for short periods of time." *Id. See also Williams v. Delo,* 49 F.3d 442, 446
(8th Cir. 1995) (prison officials were entitled to qualified immunity from liability on an
Eighth Amendment claim brought by an individual prisoner who had been placed in a
strip cell without clothing or bedding for four days; there is "no absolute Eighth
Amendment right not to be put in a cell without clothes or bedding" and no evidence that
the plaintiff in that case had suffered any injuries or that his health had been impaired).
*See McMahon v. Beard,* 583 F.2d 172 (5th Cir. 1978) (no constitutional violation in a
case brought by a pretrial detainee who, after attempting suicide by hanging himself with
strips made from sheets, was confined for up to three months in a cell without a mattress,
sheets, or blankets; evidence showed that the decision to house the plaintiff under these
conditions was made to protect the plaintiff, not to punish him, and that the housing
properly continued as long as plaintiff remained suicidal).

      Plaintiff's current allegations about his body covering in the suicide cell are vague.
The question may be whether the Constitution protects an inmate's right to bodily
privacy when his clothes have been confiscated as a protective measure in a suicide unit,
but he has been given a type of covering that he asserts is ineffective or that he refuses to

wear, causing a situation where prison staff and other inmates can see the suicide watch inmate's naked body or watch him using the toilet.

Plaintiff also states that staff viewed him and made him the object of humor. But "verbal harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). "To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd." *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997),

The Court must consider the foregoing as it reviews the Complaint. Plaintiff sues 30 individual Defendants. He asserts that Defendants issued him limited clothing items while on suicide watch, and they failed to take necessary and reasonable actions to shield his "mental state" and naked body from inmates and unnecessary staff, including those of the opposite sex, from viewing him, including while he was on the toilet. Dkt. 8 at 2-3. He asserts that his suicide watch cell had a large window facing areas where other inmates were, and they could see into his cell, where he was kept "basically" naked.

The first problem with Plaintiff's Complaint is that he fails to provide sufficient facts to state what clothing or covering he was provided and whether he intentionally refused to wear or use it. He states he was "basically" naked. He must explain exactly what was provided during each of the time frames. He mut also explain whether he

intentionally refused to wear or use the clothing or covering. He will be given leave to amend his complaint accordingly.

A second problem is that some of Plaintiff's claims are clearly outside the two-year statute of limitations period. Plaintiff presently may not proceed on incidents that occurred in May 2016, June 2016, August 2016 through September 2016, April 2017, or November through December 2017, because he did not file his original lawsuit until August 18, 2022. *See* Case 346, Dkt. 3. Any incident that arose before July 2020 should not be included in the amended complaint and may not be pursued unless Plaintiff shows that he has a legal excuse that permits the Court to hear such claims.

For claims occurring in and after July 2020, he must clearly state which Defendants did what, where, when, why, and how for each time frame he was on suicide watch. His current claims are too vague and general to proceed.

Third, Plaintiff cannot simply state that the wardens or other supervisory staff knew of or were responsible for his particular conditions of confinement. The theory of liability against "respondeat superior" defendants—that a person is liable merely for being the supervisor of a tortfeasor—does not apply to federal civil rights claims. Rather, a person may be held liable as a supervisor under § 1983 (1) if he or she had "personal involvement in the constitutional deprivation," or (2) if "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" exists. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (punctuation altered and citation omitted). *See* also *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Starr,* 652 F.3d at 1207-08 (punctuation altered and citation omitted). No supervisors should be included as defendants if Plaintiff does not have facts supporting the *Starr* supervisory liability factors. The requirement that he must clearly state which Defendants did what, where, when, why, and how for each time frame he was on suicide watch also applies to supervisory defendants.

Plaintiff does not state a claim for the following: (1) that he was continuously observed by an inmate suicide watch companion, because that factor is part of the safety system to ensure inmates on suicide watch do not commit suicide; (2) that he was continuously monitored by video camera, for the same reason; and (3) that safety lights were on 24 hours a day, for the same reason.

Plaintiff also must clarify whether he remained in suicide watch for a prolonged period of time because he refused to answer officials' questions about whether he was suicidal, preferring to assert what he believed was his First Amendment right to not answer them, or for some other reason.

**SUCCESSIVE REVIEW ORDER - 8**

# ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Amend (Dkt. 7) is GRANTED to the extent that the Court has reviewed the Amended Complaint and determined that Plaintiff must submit a second amended complaint.

2. Plaintiff may file the following within 45 days after entry of this Order if he desires to proceed: (1) a second amended complaint of no more than 20 pages (a) asserting only those claims from July 2020, forward, (b) omitting any claims that a suicide watch companion inmate continuously watched Plaintiff in his suicide watch cell, that he was continuously video-monitored, and that safety lights were continuously illuminated; (c) specifying exactly what type of clothing or covering was issued to him and whether he intentionally did not wear or use it; (d) matching up each defendant with particular acts, dates of occurrences, and other facts as explained above; (e) clarifying whether he refused to tell prison employees whether he was suicidal or not, for First Amendment or any other specific reasons; (f) clarifying how each Defendant, including supervisors, had personal participation in the alleged violations, including particular acts, dates of occurrences, and other facts; and (g) adding alternative legal grounds of the Eighth (with attendant deliberate indifference allegations) and/or Fourteenth Amendments, if desired.

3. Plaintiff may file a separate statute of limitations brief of no more than 20 pages showing why he should be permitted to proceed on claims prior to July 2020. He has been provided with the standard of law for the statute of limitations and legal excuses in several of his cases, and therefore the Court will not provide it again here.

4. Failure to follow these requirements will result in dismissal of this case without further notice under Federal Rule Civil of Procedure 41(b).

DATED: November 6, 2025

B. Lynn Winmill
U.S. District Court Judge